UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY HARRIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LSP PRODUCTS GROUP, INC.,<br><br>Defendant. | No. 2:18-cv-02973-TLN-KJN<br><br>**ORDER** |

This matter is before the Court pursuant to Defendant LSP Products Group, Inc.'s ("Defendant") Motion to Dismiss (ECF No. 68.) Plaintiff Tiffany Harris ("Plaintiff") opposed the motion. (ECF No. 73.) Defendant replied. (ECF No. 77.) For the reasons set forth herein, the Court GRANTS Defendant's Motion to Dismiss.

///
///
///
///
///
///
///

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises from a purportedly defective product that caused damage to Plaintiff's home. Defendant is a corporation that manufactures, markets, and sells "Aqua-Flo Mighty Flex" braided steel water supply lines ("Braided Lines"). (ECF No. 24 at 2.) Braided Lines are flexible tubing covered by tightly braided stainless-steel wires that connect the water supply line to common household fixtures (e.g., toilets, faucets, dishwashers, etc.) to supply them with hot and cold water. (*Id.* at 2, 8.) Each Braided Line tubing has a compression nut (either metal or plastic) at each end of the line to connect the water supply line to the fixture. (*Id.*) If either compression nut fails, the entire Braided Line is useless. (*Id.* at 4.)

Defendant advertises the Braided Lines as a "safe and superior alternative to rigid metal pipes with shutoff valves," made with "high-quality materials" to provide "'unmatched' durability, and . . . long, useful lifespan." (*Id.* at 9–10.) However, Plaintiff alleges Defendant "uses a low-grade material for its brass compression nuts and inserts that, at the point of sale, is brittle, degraded, and highly susceptible to stress corrosion cracking and branching fractures." (*Id.* at 13.) Similarly, Defendant uses a low-grade material for its plastic coupling nuts that is also susceptible to stress cracking and branching fractures. (*Id.*) As a result, Plaintiff alleges all compression nuts in the Braided Lines are defective because they fail under normal use (including continuous water pressure) due to cracking and branching fractures resulting from stress. (*Id.* at 13–14.) This defect is not discernable to an untrained person or without magnification. (*Id.* at 12.) Plaintiff further alleges Defendant was aware of this defect but failed to disclose it to the public and failed to instruct its customers to inspect their Braided Lines for signs of stress cracking or branching fractures on the compression nuts. (*Id.* at 9, 13.)

In March 2013, a set of Braided Lines from Defendant was installed in Plaintiff's bathroom in her vacation home in Truckee, California. (*Id.* at 6.) In October 2015, Plaintiff alleges the Braided Line broke — specifically, the brass insert of the compression nut fractured — and flooded the first floor of her home. (*Id.* at 7.) By the time the flooding was discovered, the property had sustained more than $30,000 in damages. (*Id.*)

///

Plaintiff initiated this action on April 12, 2018 in the Central District of California. (ECF No. 1.) Plaintiff seeks to bring this action on behalf of herself and a nationwide class, as well as a subclass of individuals in the state of California, who purchased and/or own Braided Lines. (*See* ECF No. 24.) Defendant moved to dismiss and transfer venue to the Eastern District of California, where the subject Braided Line allegedly failed and damage occurred. (*See* ECF Nos. 33, 38.) On November 13, 2018, the Central District Court granted Defendant's motion to transfer venue and transferred the action to this Court. (*See* ECF No. 61.)

The operative First Amended Complaint ("FAC") appears to assert ten causes of action: (1) violations of the Song Beverly Consumer Warranty Act (Cal. Civ. Code §§ 1790, *et seq.*); (2) breach of implied warranty of merchantability; (3) breach of express warranty; (4) unlawful and unfair business acts and practices in violation of California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code §§ 17200, *et seq.*); (5) negligence; (6) negligent failure to warn; (7) strict liability — defect and failure to warn; (8) violations of California's False Advertising Act ("FAL") (Cal. Bus. & Prof. C. §§ 17500 *et. seq.*); (9) violations of the Consumer Legal Remedies Act ("CLRA") (Cal. Civ. C. §§ 1750 *et. seq.*); and (10) unjust enrichment.[1] (*See* ECF No. 24.)

On December 18, 2018, Defendant filed the instant Motion to Dismiss pursuant to Federal Rules of Civil Procedure ("Rule" or "Rules") 9(b), 12(b)(1), 12(b)(2), and 12(b)(6). (*See* ECF Nos. 68, 69.) On January 21, 2019, Plaintiff opposed the motion and on February 14, 2019, Defendant replied. (ECF Nos. 73, 77.)

**II.    STANDARD OF LAW**

A.    Federal Rule of Civil Procedure 12(b)(1)

A motion under Federal Rule of Civil Procedure ("Rule") 12(b)(1) challenges a federal court's jurisdiction to decide claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1); *see also id.* at 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the

---

[1]    Plaintiff's claim for unjust enrichment is not designated by heading as the tenth cause of action but is expressly separated from Claim Nine. (*See* ECF No. 24 at 41–42.) Specifically, the phrase "Unjust Enrichment" and "On Behalf of the Classes" are both bolded and centered on the page, followed by the same paragraph of incorporation that appears under the heading for each distinct cause of action. (*Id.*) Accordingly, the Court will refer to this claim as Plaintiff's tenth claim.

court must dismiss the action.").  A court considering a motion to dismiss for lack of subject matter jurisdiction is not restricted to the face of the complaint and may review any evidence to resolve disputes concerning the existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988); *see also Thornhill Pub. Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (in a factual attack on subject matter jurisdiction, "[n]o presumptive truthfulness attaches to plaintiff's allegations.").  "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence."  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (quoting *Rattlesnake Coal. v. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)).

If a plaintiff lacks standing under Article III of the United States Constitution, then the Court lacks subject matter jurisdiction and the case must be dismissed.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998).  Similarly, "if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  To satisfy Article III standing, a plaintiff must allege: (1) an injury-in-fact that is concrete and particularized, as well as actual or imminent, not conjectural or hypothetical; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is redressable by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016) *as revised* (May 24, 2016); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  Plaintiff bears the burden of proof and must "clearly . . . allege facts demonstrating each element."  *Spokeo, Inc.*, 136 S. Ct. at 1547 (internal quotations omitted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  "[E]ven named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'"  *Id.* at 1547 n.6 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

B.      Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows a party to file a motion to dismiss for lack of personal jurisdiction.  When there is no federal statute authorizing personal jurisdiction, the

district court applies the law of the state in which the district court sits. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute is coextensive with federal due process requirements. Cal. Civ. Proc. Code § 410.10. Accordingly, the "jurisdictional analyses under state law and federal due process are the same." *Mavrix Photo*, 647 F.3d at 1223 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (2004)). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Under the minimum contacts test, there are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014).

A court may assert general personal jurisdiction over corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation will primarily be "at home" for the purposes of general jurisdiction in two paradigmatic forums: its place of incorporation and its principal place of business. *Daimler*, 571 U.S. at 137. General jurisdiction is not limited to these two forums, but will only be available elsewhere in the "exceptional case" where a corporation's affiliations with a forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 139 n.19; *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("Only in an 'exceptional case' will general jurisdiction be available anywhere else.").

Specific jurisdiction, on the other hand, is satisfied when the defendant's activities are directed toward the forum state and the defendant's liability arises out of or relates to those activities. *Daimler*, 571 U.S. at 127. In the Ninth Circuit, courts employ a three-part test to determine whether a defendant's contacts suffice to establish specific jurisdiction: "(1) the nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiff's claim must arise out of

or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 620–21 (9th Cir. 1991) (emphasis omitted). Plaintiff bears the burden of satisfying the first two prongs, and if they are met, the burden shifts to Defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Mavrix Photo*, 647 F.3d at 1228.

In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's jurisdiction over the defendant. *Wash. Shoe Co. v. A–Z Sporting Goods Inc.*, 704 F.3d 668, 671–72 (9th Cir. 2012). However, when the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). The court resolves all disputed facts in favor of the plaintiff. *Id.* at 672.

### C.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege

///

"'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading ///

7

could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### D. Federal Rule of Civil Procedure 9(b)

"A motion to dismiss a complaint or claim 'grounded in fraud' under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). "Because a dismissal of a complaint or claim grounded in fraud for failure to comply with Rule 9(b) has the same consequence as a dismissal under Rule 12(b)(6), dismissals under the two rules are treated in the same manner." *Id.* (citing *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017 (5th Cir. 1996); *Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986)). Thus, when granting a motion to dismiss under Rule 9(b), leave to amend should similarly be given "unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Lopez*, 203 F.3d at 1127).

### III. ANALYSIS

Defendant moves to dismiss Plaintiff's first, second, third, fourth, eighth and ninth claims pursuant to Rules 9(b), 12(b)(1), and 12(b)(6).[2] (*See generally* ECF Nos. 68, 69.) Defendant additionally moves to dismiss all of Plaintiff's nationwide class claims pursuant to Rules 12(b)(2) and 12(b)(6). (ECF No. 69 at 11, 23–27.) The Court addresses each argument in turn.

### A. Song-Beverly Act and Warranty Claims (Claims One, Two, and Three)

Defendant argues Plaintiff's Song-Beverly Act[3] (Claim One) and warranty-based claims

---

[2] It is unclear why Defendant did not additionally seek dismissal of Plaintiff's negligence and strict products liability claims (Claims Five, Six, and Seven) as time-barred under the applicable two-year statutes of limitations. *See* Cal. Civ. Proc. Code § 335; *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 809, n.3 (2005). Nonetheless, the Court declines to rule on issues not properly addressed by the parties and Plaintiff may amend these claims as well, consistent with the Court's findings with respect to the nationwide class claims discussed herein.

[3] Pursuant to the Song-Beverly Consumer Warranty Act, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792.

(Claims Two and Three) should be dismissed under Rule 12(b)(6) because they are time-barred by the applicable four-year statute of limitations.  (*Id.* at 10.)  Alternatively, Defendant argues the Braided Line at issue is not a "consumer good" within the meaning of the Song-Berverly Act, Plaintiff lacks vertical privity with Defendant required for an implied warranty claim, and the Braided Line outlasted its one-year express warranty.  (*Id.* at 11–15.)  Because the Court finds these claims are time-barred, it will address the statute of limitations argument and declines to evaluate the remainder of Defendant's arguments.

As to the statute of limitations argument, the parties agree Claims One through Three are subject to the statute of limitations period set forth under California Commercial Code § 2725(1) ("§ 2725").  (*Id.* at 11; ECF No. 73 at 9); *see also Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1306 (2009) (statute of limitations for an action for breach of warranty under the Song-Berverly Act is governed by Cal. Com. Code § 2725); *MacDonald v. Ford Motor Company*, 37 F. Supp. 3d 1087, 1100 (N.D. Cal. 2014) (same).

Under § 2725, any claim for breach of contract for sale of goods must be brought "within four years after the cause of action has accrued."  Cal. Com. Code § 2725(1).  Such claim accrues at tender of delivery, with a limited exception for future performance:

> A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Cal. Com. Code § 2725(2).

Although the parties agree § 2725 supplies the applicable statute of limitations for all of Plaintiff's warranty-based claims, they disagree as to when the statute of limitations period commenced.  (*See* ECF No. 69 at 12; ECF No. 73 at 9–11.)  Defendant argues the limitations period commenced no later than March 2013, at the time of installation.  (ECF No. 69 at 12; *see also* ECF No. 24 at 6.)  Plaintiff impliedly invokes the "future performance" exception by arguing the statute of limitations did not begin to run until discovery of the latent defect in October 2015, when the line broke and caused damage to Plaintiff's property.  (ECF No. 73 at 11.)  However,

Plaintiff fails to establish the future performance exception applies here, or otherwise identify any distinct exception for latent defects.

Indeed, the majority of California courts construe the future performance exception narrowly, applying it only "when the seller has expressly agreed to warrant its product *for a specific and defined period of time.*" *Cardinal Health 301, Inc. v. Tyco Electronics Corp. (Cardinal Health)*, 169 Cal. App. 4th 116, 130 (2008) (emphasis in original) (collecting cases). Section 2725 "reflects the drafters' intention to establish a reasonable period of time — four years — beyond which sellers need not worry about stale warranty claims." *Id.* Therefore, while "a buyer and a seller can freely negotiate to extend liability into the future . . . [,] an express warranty which makes no reference at all to any future date should not be allowed to extend past the limitations period." *Id.* Thus, the exception "does not occur in the usual case, even though all warranties in a sense apply to the future performance of goods." *Id.* at 131 (finding exception did not apply to more specific warranty involving promise that the product will work for "50,000 cycles"); *see also Carrau v. Marvin Lumber & Cedar Co.*, 93 Cal. App. 4th 281, 292 (2001) (holding that general assertions as to the performance or durability of a product, such as the assertions in advertisements and literature "do not rise to the level of a warranty explicitly extending to future performance.").

Further, if the product is available for immediate use and inspection upon delivery, the exception does not apply because the "must await" clause is inapplicable. *See Cardinal Health*, 169 Cal. App. 4th at 133 ("The determinative fact, for purposes of the 'must await' requirement, is that discovery is '*possible* prior to any specific future time.'") (emphasis in original) (citation omitted). Application of this doctrine is inclusive of products with latent defects. *See*, *e.g.*, *id.* at 123–126, 133 (action in which suit was filed two years after discovery of latent defect but more than four years after delivery of product was barred by statute of limitations under § 2725 because "future use" exception did not apply).

California case law makes clear the exception does not apply to Plaintiff's Song-Beverly Act and implied warranty claims (Claims One and Three). *See J.B. Painting & Waterproofing, Inc. v. RGB Holdings, Ltd. Liab. Co. (J.B. Painting)*, 650 F. App'x 450, 453 (9th Cir. 2016)

(discussing California cases' application of § 2725(2) and holding "[t]he future-performance exception does not apply to . . . implied warranty claims because implied warranties do not explicitly extend to future performance.").

The Court additionally concludes the exception does not apply to Plaintiff's express warranty claim (Claim Three).  While the FAC notes Defendant's express one-year warranty, it does not allege facts showing Defendant expressly warranted its Braided Lines for some "specific period of time," or that the product was delivered for "future performance."  (ECF No. 24 at 12); *see J.B. Painting*, 650 F. App'x at 453 (citing *Cardinal Health*, 169 Cal. App. 4th at 131; *MacDonald*, 37 F. Supp. 3d at 1100).  To the contrary, Plaintiff alleges the Braided Line was installed in her house and therefore available for immediate use in March 2013.  (ECF No. 24 at 6); *Cardinal Health*, 169 Cal. App. 4th at 133 (exception did not apply where plaintiff "could have discovered" latent defect at any time after delivery of product).  Accordingly, the statute of limitations runs from the time that the defect first existed.

Furthermore, Plaintiff's reliance on *Mexia* and *Daniel v. Ford Motor Co.* for the contention that, in the case of a latent defect, a cause of action accrues at the time of discovery of the defect (*see* ECF No. 73 at 10–11) is unavailing.  Neither *Mexia* nor *Daniel* considered the issue of whether the future performance exception under § 2725 applied.  *See Cardinal Health*, 169 Cal. App. 4th at 133 ("Cases are not authority for propositions not considered therein.") (citation omitted).  Rather, these cases held that latent defects may breach the implied warranty even when they are not discovered within the implied warranty's one-year duration under § 1791.1 because § 2725 extends the statute of limitations duration to four years.  *See Mexia*, 174 Cal. App. 4th at 1304–07 (applying purchase date as date of delivery under § 2725, "although a defect may not be discovered for months or years after a sale, merchantability is evaluated as if the defect were known."); *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222–23 (9th Cir. 2015).

Here, Plaintiff alleges the defect was inherent and existed at the time of sale/installation (*i.e.*, March 2013).  (ECF No. 24 at 6, 12–13.)  Thus, the latest Plaintiff could have brought a claim was four years after the Braided Line was purchased and installed in her home — March 2017.  Cal. Com. Code § 2725(2); *see also Glenn v. Hyundai Motor Am.*, No. SACV 15-2052-

DOC (KESx), 2016 WL 7507766, at *4 (C.D. Cal. Nov. 21, 2016) (citing *Daniel*, 806 F.3d at 1223) ("In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is breached, by the existence of the unseen defect, not by its subsequent discovery.").  Further, even if the statute had accrued on the last day of the implied warranty for the purchase/installation, in March 2014, the claim would still be barred because the original complaint was not filed until more than four years later on April 12, 2018.  (*See* ECF No. 1); Cal. Civ. Code § 1791.1 ("in no event shall [the duration of the implied warranty of merchantability] have a duration of . . . more than one year following the sale of new consumer goods to a retail buyer."); *see also Mexia*, 174 Cal. App. 4th at 1304.

Accordingly, Plaintiff's claims for violations of the Song-Beverly Act, breach of implied warranty, and breach of express warranty (Claims One, Two, and Three) are barred by the statute of limitations.  Cal. Com. Code § 2725.  Having found Plaintiff's claims are time-barred, the Court need not reach Defendant's remaining arguments with respect to Claims One, Two, or Three.

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's claims for violations of the Song-Beverly Act, breach of implied warranty, and breach of express warranty (Claims One, Two, and Three, respectively).  However, the Court grants Plaintiff leave to join another potential class representative who has a claim which is not time-barred.

B.  California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act Claims (Claims Four, Eight, and Nine)

The UCL, FAL, and CLRA are California consumer protection statutes.  The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Its coverage has been described as "sweeping," and its standard for wrongful business conduct is "intentionally broad."  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co. (Cel-Tech)*, 20 Cal. 4th 163 (1999)).

The FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known,

to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. "In determining whether a statement is misleading under the statute, the primary evidence in a false advertising case is the advertising itself." *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 679 (2006), *as modified on denial of reh'g* (Jan. 31, 2006) (internal quotation marks and citation omitted).

The CLRA prohibits "'unfair methods of competition and unfair or deceptive acts or practices' in transactions for the sale or lease of goods to consumers." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 833, (2006), *as modified* (Nov. 8, 2006) (citing Cal. Civ. Code § 1770(a)). Under the CLRA, sellers can be liable for "making affirmative misrepresentations as well as for failing to disclose defects in a product." *Baba v. Hewlett-Packard Co.*, No. C 09-05946 RS, 2010 WL 2486353, at *3 (N.D. Cal. Jun. 16, 2010).

The standard for all three statutes is the "reasonable consumer" test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). As a result, courts often analyze these three statutes together. *See, e.g., Consumer Advocates*, 113 Cal. App. 4th at 1360–62 (analyzing representations under the CLRA, UCL, and FAL together); *Tait v. BSH Home Appliances Corp.*, No. SACV 10-00711 DOC (ANx), 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011) (same).

Here, Plaintiff articulates two general theories to show Defendant's conduct was misleading and deceptive to both her and to a reasonable consumer. First, Plaintiff alleges Defendant affirmatively misrepresented that the Braided Line product is made of "high quality materials," its "performance and durability is unmatched in the market place," and it is "the innovation and quality standard bearer in water connectors and valves . . . ." (ECF No. 24 at ¶ 26.) Second, Plaintiff alleges that, despite knowing "the Braided Lines include compression nuts that fail due to stress cracking and branching fractures, whether constructed from plastic and brass, as a result of . . . the inferior quality of the compression nuts," "posing a substantial risk of failure," Defendant fraudulently and deceptively failed to disclose this latent defect to Plaintiff and the class members, consequently requiring Plaintiff and the class members to "replace and

13

discard their Braided Lines sooner than reasonably expected, often following significant water damage to their real and personal property from the [Braided] Lines' failure." (*Id.* at ¶¶ 8, 24.)

Defendant moves to dismiss Plaintiff's UCL, FAL, and CLRA claims pursuant to Rule 12(b)(1) on the basis that Plaintiff lacks Article III standing with respect to her request for injunctive relief and for the claims generally. (ECF No. 69 at 10–11, 15–18.) Alternatively, Defendant argues Plaintiff's claims fail as a matter of law under Rules 12(b)(6) and 9(b) because: (1) Plaintiff fails to allege actual reliance under the heightened pleading requirements; (2) Defendant's advertisements are non-actionable puffery; (3) Defendant's product outlasted its warranty; and (4) Plaintiff has not adequately pled a basis for her UCL claim. (*Id.* at 18–23.) The Court will address each argument in turn.

### i. Standing

Defendant argues Plaintiff lacks standing for her UCL, FAL, and CLRA claims to the extent she seeks injunctive relief because she does not plead an intent to repurchase. (*Id.* at 10–11, 15–17.) As a result, Defendant seeks dismissal of the claims or, alternatively, that Plaintiff's requests for injunctive relief be stricken. Defendant also argues Plaintiff lacks standing in general for her UCL, FAL, and CLRA claims because she fails to allege actual reliance on the advertisements. (*Id.* at 17–18.)

### a) Standing for UCL, FAL, and CLRA Claims Based on Request for Injunctive Relief

Standing must be established as to each requested form of relief. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000)). "For injunctive relief, which is a prospective remedy, . . . the 'threatened injury must be *certainly impending* to constitute injury in fact.'" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)) (emphasis in original). "[A]llegations of *possible* future injury are not sufficient." *Id.* (emphasis in original). Specifically regarding claims under the UCL, CLRA or FAL, the Ninth Circuit has held that a "previously deceived consumer" may have standing to seek an injunction against false advertising or labeling" if she plausibly alleges: (1) she "will be unable to rely on the product's advertising or

labeling in the future, and so will not purchase the product although she would like to"; or (2) that she "might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

Plaintiff concedes her failure to plead an intent to repurchase but indicates she may cure it through amendment. (ECF No. 73 at 16.) Plaintiff's claims — to the extent they seek injunctive relief — are therefore DISMISSED with leave to amend. *Lopez*, 203 F.3d at 1130.

> b)  *Standing for UCL, FAL, and CLRA Claims Based on Causation Element*

As previously discussed, Article III standing requires Plaintiff to allege injury-in-fact, causation, and redressability. *See Spokeo, Inc.*, 136 S. Ct. at 1547; *Monsanto Co.*, 561 U.S. at 149. As to the causation element, a plaintiff bringing UCL, FAL and CLRA claims based on false advertising and misrepresentations to consumers must show "actual reliance on the allegedly deceptive or misleading statements," such that "the misrepresentation was an immediate cause of the injury-producing conduct." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326–27 (2011) (recognizing "reliance is the causal mechanism of fraud"). The California Supreme Court has held that a consumer "who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement . . . by alleging . . . that he or she would not have bought the product but for the misrepresentation." *Id.* at 330. Of course, a plaintiff must have knowledge of the misrepresentation in advance of purchase in order to rely on it. *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1244 (N.D. Cal. 2017) (collecting cases requiring "plaintiffs to allege they actually saw and relied on alleged misrepresentations" to bring false advertising claim).

Defendant argues Plaintiff fails to allege actual reliance because she does not allege facts showing she was aware of the contested advertisements and relied on them in deciding to purchase the Braided Line. (ECF No. 69 at 17.) Moreover, the FAC indicates a "third party independent contractor" purchased and installed the Braided Line, not Plaintiff. (*See id.* at 18 (citing ECF No. 24 at ¶¶ 18, 73).) In opposition, Plaintiff points to allegations in the FAC that

she "reasonably relied upon [Defendant's] representations . . . that the Braided Lines were suitable for plumbing usage in her home," points to a specific advertisement on Defendant's website, and argues her reliance stems from an agency theory when she "purchased the Braided Line from a third party contractor who had obtained the product from a California retailer." (ECF No. 73 at 16 (citing ECF No. 24 at ¶ 73, 149).) Nonetheless, Plaintiff appears to concede she did not herself view the website. (*See id.* at 17.)

The Court declines to consider Plaintiff's agency relationship argument raised for the first time in opposition to Defendant's motion and not alleged in the FAC. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (holding "a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss," but noting such allegations may be considered to determine whether granting leave to amend is appropriate) (emphasis in original). Regardless, the FAC lacks allegations showing that either Plaintiff or her contractor saw the website advertisement and relied on it to purchase the Braided Line, that Plaintiff ratified the contractor's decision to purchase the Braided Line based on the advertisement, or other allegations showing Plaintiff's awareness of the advertisement prior to the purchase and installation of the Braided Line in her home. As such, she fails to establish standing for her UCL, FAL and CLRA claims. *Kwikset Corp.*, 51 Cal. 4th at 326–27, 330. Nevertheless, the Court cannot say the pleading "could not possibly be cured by the allegation of other facts.'" *Lopez*, 203 F.3d at 1130. Therefore, Defendant's Motion is GRANTED as to Claims Four, Eight, and Nine with leave to amend.

In light of its determination that Plaintiff may cure the aforementioned pleading deficiencies through amendment, in the interests of judicial efficiency, the Court will briefly address the merits of Defendant's motion to dismiss under Rules 9(b) and 12(b)(6).

### ii.     Rule 9(b) Heightened Pleading Requirements

When, as here, CLRA, FAL, and UCL claims are grounded in fraud, the plaintiff must satisfy the heightened pleading requirements of Rule 9(b). *Davidson*, 889 F.3d at 964 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). Generally, a plaintiff must "identify the who, what, when, where, and how of the misconduct charged, as well as what is

false or misleading about the purportedly fraudulent statement, and why it is false."[4] *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020) (quoting *Davidson*, 889 F.3d at 964). In addition to the heightened pleading requirements, a plaintiff must still also plead the elements of each claim, including reliance. *See Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1043 (discussing reliance element) (N.D. Cal. 2014).

Defendant argues Plaintiff's UCL, FAL, and CLRA claims fail to state a claim under Rule 12(b)(6) because Plaintiff fails to allege reliance with the particularity required under Rule 9(b). (ECF No. 69 at 18–20.) Defendant does not argue that Plaintiff fails to allege the other elements of her claims with sufficient particularity under Rule 9(b). (*See generally id.*) In opposition, Plaintiff reasserts her prior standing-based arguments. (*See* ECF No. 73 at 16, 18.) As discussed above, Plaintiff has not sufficiently pleaded reliance because she has not alleged facts showing awareness of the advertisement for Braided Lines on Defendant's website prior to the product being purchased and installed in her home.

### iii. Affirmative Misrepresentations/Puffery

Defendant argues Plaintiff's claims based on alleged misrepresentations fail because the identified statements constitute non-actionable puffery. (ECF No. 69 at 21.) As the Ninth Circuit explained in *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc. (Cook)*, 911 F.2d 242 (9th Cir. 1990), "[t]he common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions." *Id.* at 246 ("[A]dvertising which merely states in general terms that one product is superior is not actionable." (citation and quotation marks omitted)). Consequently, "[s]pecific, quantifiable 'statements of fact' that refer to a product's absolute characteristics may constitute false advertising, while general, subjective, unverifiable claims are 'mere puffery' that cannot." *Edmundson v. Proctor & Gamble Co.*, 537 F. App'x 708, 709 (9th Cir. 2013) (citing *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008)); *see also*

---

[4] When a claim rests on an alleged fraudulent omission, however, a plaintiff cannot plead either the specific time or place of a failure to act. *See Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987). Therefore, "the plaintiff may find alternative ways to plead the particular circumstances of the fraud." *Id.*

*Rasmussen*, 27 F. Supp. 3d at 1039 (citations omitted) (providing chart of examples showing puffery vs. actionable statements compiled from multiple cases).

Plaintiff identifies the following statements as actionable misrepresentations from Defendant's website: "quality standard bearer"; "performance and durability is unmatched in the market place"; "[Defendant] developed the first NSF certified connector liner"; and "[a]s we continue to push the technological envelope on new materials, LSP has developed better and tougher . . . connectors." (ECF No. 73 at 20 (citing ECF No. 24 at ¶ 26).)  The Court finds all but one of the identified statements constitutes non-actionable puffery.  *See, e.g., Cook*, 911 F.2d at 246 (stating lamps were "far brighter than any lamp ever before offered for home movies" was puffery); *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (statements regarding quality and reliability were puffery); *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS (ANx), 2013 WL 6477821, at *5–6 (C.D. Cal. Nov. 8, 2013) (statements that Maytag was "synonymous with dependability" with an "unequaled tradition of quality production and unrivaled performance" were too vague to be actionable); *Hodges v. Apple Inc.*, No. 13-cv-01128-WHO, 2013 WL 4393545, at *3–4 (N.D. Cal. Aug. 12, 2013) (representation that an Apple laptop has "the world's most advanced notebook display" and has the "most advanced" technology was puffery).

With respect to the representation that "[Defendant] developed the first NSF certified connector liner," it is unclear whether Plaintiff is challenging the representation that Defendant's connectors are "NSF certified" or whether Defendant was the first manufacturer to develop an NSF certified connector.  Regardless, this representation is based in fact and can be verified.  As such, it may be actionable if material to Plaintiff's claim.  *Edmundson*, 537 F. App'x at 709; *Cook*, 911 F.2d at 246.  Accordingly, Defendant's motion fails as to this statement.

### iv.  Failure to Disclose (Post-Warranty)

The parties do not dispute that the Braided Line outlasted the one-year express warranty. Therefore, Plaintiff's failure to disclose claims are subject to the post-warranty test.  A California Court of Appeal has held a manufacturer cannot be found liable for failure to disclose a defect that manifests itself after expiration of the warranty period unless such omission: (1) is "contrary

to a representation actually made by the defendant"; or (2) pertains to a "fact the defendant was obligated to disclose." *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daugherty*, 144 Cal. App. 4th at 835–36). Under California law, there are four circumstances in which an obligation to disclose may arise:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255–56 (2011) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997); *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1094–95 (N.D. Cal. 2007)). A fact is deemed "material," requiring that the manufacturer disclose it, if a reasonable consumer would deem it "important in determining how to act in the transaction at issue." *Id.* at 256.

However, where a plaintiff's claim is based on a manufacturer's failure to disclose a latent defect which creates a likelihood of the product failing outside the warranty period, the Ninth Circuit has narrowly construed the circumstances in which such omission will be deemed "material." *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141–42 (9th Cir. 2012). Specifically, for the omission to be material, a plaintiff must establish the defect poses "safety concerns" or, alternatively, the defect affects the "central function of the product." *Id.* at 1142–43; *Browning v. Unilever United States, Inc.*, 809 F. App'x 446, 447 (9th Cir. 2020) (internal quotations omitted) (citing *Hodsdon*, 891 F.3d at 862); *see also Collins*, 202 Cal. App. 4th at 256–58.

Defendant argues Plaintiff's failure to disclose claims under the UCL, FAL, and CLRA fail because Plaintiff fails to allege facts showing the purported defect posed a safety risk. (ECF No. 69 at 20.) In opposition, Plaintiff argues she sufficiently alleged the failure of the Braided Line poses "a serious risk of harm where flooding takes place around electrical outlets, appliances, and related household items that could electrocute anyone who comes into contact with or near those items," and that her home did flood as a result of the Braided Line failure.

(ECF No. 73 at 14; *see also* ECF No. 24 at ¶¶ 19, 50.) The Court finds Defendant has the better argument with respect to safety hazards for the reasons discussed herein.

To establish the defect poses "safety concerns," a plaintiff must first identify an actual safety hazard tied to use of the product. *Compare Falk*, 496 F. Supp. 2d at 1096 (defective speedometer constituted safety hazard where plaintiff alleged defect could "lead to traveling at unsafe speeds and moving-violation penalties.") *with In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1084, 1096 (S.D. Cal. 2010) (defect causing color anomalies on television screen had no impact on the safe use of televisions).

Further, the plaintiff must establish a sufficient causal connection between the alleged defect and the alleged safety hazard. *Wilson*, 668 F.3d at 1143. In *Wilson*, for example, the plaintiffs complained of a design defect in the laptop computer, by which an "exceedingly fragile" internal component would continually weaken the connection between the power jack and the computer over time until the connection ultimately failed. *Id.* The plaintiffs claimed this defect posed a safety concern because it resulted in "severe overheating [of the internal components of the laptop] often resulting in the Laptops [sic] catching on fire." *Id.* at 1143–44. Supporting allegations of the alleged safety hazard provided examples in which the motherboard caught on fire and melted the laptop "into a useless clump of junk"; the AC power adapter failed and caught fire; and "smoke began to flow rapidly from inside the computer" when the power jack completely failed. *Id.* at 1144. Yet the Ninth Circuit affirmed the district court's dismissal of the claim, on the basis that the plaintiffs failed to allege "a sufficient nexus between the alleged design defect and the alleged safety hazard." *Id.* (citing *Tietsworth v. Sears, Roebuck & Co.*, No. 5:09-CV-00288 JF (HRL), 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) (rejecting claim where plaintiffs failed to establish an "obvious nexus" between the defective control board in washing machines that caused the machines to stop mid-cycle and display a variety of error codes and the allegation that the defect led to the machines' spinning out of control and exploding)). In finding the *Wilson* plaintiffs failed to sufficiently establish how the weakening or loss of the connection between the power jack and the motherboard was causally-related to the laptops igniting, the

///

court explained, "it is difficult to conceive (and the complaint does not explain) how the Laptops could ignite if they are 'unable to receive an electrical charge.'" *Id.*

Here, the causal nexus between the alleged failure of the Braided Lines and the alleged safety hazard is also too attenuated to state a claim. Plaintiff contends the potential safety hazard that will result from a failed Braided Line is electrocution, "where [the] flooding takes place around electrical outlets, appliances, and related household items."[5] (ECF No. 24 at ¶ 50; ECF No. 73 at 14.) This allegation alone demonstrates an insufficient causal nexus, as none of Plaintiff's allegations describing the Braided Line product indicate it must be installed within close proximity to "electrical outlets, appliances, [or] related household items," and only alleges the safety hazard exists "where" such circumstances occur. In fact, Plaintiff does not allege there were any "electrical outlets, appliances, [or] related household items" located near the Braided Line installed in her bathroom that created a risk of electrocution. Nor does Plaintiff allege that she was electrocuted as a result of the Braided Line failing in her home. Indeed, Plaintiff does not allege anyone's safety was at risk at any time: Plaintiff was out of town at the time the Braided Line failed and did not face any safety risk; the extensiveness of flooding in Plaintiff's home occurred because no one noticed the Braided Line had failed for 3–4 days; despite the significant flooding and mold damage that occurred in Plaintiff's home, she does not allege any electrical hazards were created; and Plaintiff does not allege the neighbor who discovered the flooding was exposed to any safety risk. (*See* ECF No. 24 at ¶ 3.) Nor does Plaintiff identify any safety hazard encountered by any of the putative class members as a result of a Braided Line failure. Accordingly, the FAC fails to set forth sufficient allegations to establish the requisite

///

---

[5] The Court acknowledges Plaintiff additionally argues it is reasonably inferable that the failure of the Braided Lines creates a "heightened potential for slips and falls in areas, such as bathrooms, when flooding has occurred" and that this is "an open and obvious safety hazard." (ECF No. 73 at 14.) However, Plaintiff does not allege any facts related to slipping and falling in the FAC, but impermissibly asserts the contention for the first time in her oppositional briefing. *Broam*, 320 F.3d at 1026; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("[T]he court [is not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

causal nexus between the alleged defect and the alleged safety concern. *Wilson*, 668 F.3d at 1143. Thus, Plaintiff fails to sufficiently allege a material omission based on safety concerns.

However, the inquiry does not end there. While Defendant correctly argues Plaintiff fails to allege a safety risk posed by the defect, Defendant does not address the alternative test for materiality established by the Ninth Circuit applying more recent California cases. *See Hodsdon*, 891 F.3d at 862–65, n.6 (9th Cir. 2018) (neither relying on nor overruling *Wilson* but applying more recent California cases showing that safety hazard pleading requirement is not always necessary in omission cases). Specifically, Defendant does not address the issue of whether the purported defect affects the "central function of the product." On this basis, Defendant's motion to dismiss the post-warranty claims fails.

*v.        Remaining UCL Claims*

As previously noted, California law prohibits "any unlawful, unfair or fraudulent business act." Cal. Bus. & Prof. Code § 17200. Plaintiff's UCL claim is based on the unlawful and unfair prongs.[6] (ECF No. 24 at ¶ 109.) Defendant argues Plaintiff fails to allege a UCL claim under either prong. (ECF No. 69 at 21–23.)

*a)  Unlawful*

"By proscribing any unlawful business practice, [§] 17200 borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Cel-Tech*, 20 Cal. 4th at 180 (internal citations and quotations omitted). The "unlawful" practices prohibited by this law include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838–39 (1994) (citing *People v. McKale*, 25 Cal. 3d 626, 632 (1979)).

Defendant argues Plaintiff's UCL claim fails under the unlawful prong because she fails to state any other claim. (ECF No. 69 at 22.) The Court agrees. Common law claims may not constitute predicate acts for a UCL claim. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622

---

[6] The Court additionally notes that, although Plaintiff does not purport to assert her UCL claim under the fraudulent prong, her claim nonetheless sounds in fraud because it is predicated on Defendant's alleged misrepresentations and is therefore subject to the heightened pleading standard set forth under Rule 9(b). *Kearns*, 567 F.3d at 1125.

F.3d 1035, 1044 (9th Cir. 2010).  Therefore, Plaintiff's UCL claim may only be predicated on her Song-Beverly Act, FAL or CLRA claims.  (*See* ECF No. 73 at 21–22 (opposition confirms these are the predicate claims upon which Plaintiff relies).)  However, in light of the Court's determination that Plaintiff fails to state a claim under the Song-Beverly Act, FAL, or CLRA, Plaintiff's derivative UCL claim under the unlawful prong also fails.

*b)  Unfair*

A plaintiff may bring a UCL claim under the unfair prong if she establishes that the purportedly unfair conduct is: (1) "tethered to some legislatively declared policy"; (2) "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; or (3) "cause[s] unforeseeable injuries to consumers that are not outweighed by countervailing benefits."  *Allen v. Hylands, Inc.*, 773 F. App'x 870, 874 (9th Cir. 2019) (citing *Cel-Tech*, 20 Cal. 4th at 163; *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247 (2010); *Camacho v. Auto. Club of S. Cal.*, 142 Cal. App. 4th 1394, 1402–03 (2006)); *Hodsdon*, 891 F.3d at 866.

Plaintiff applies the third test to her UCL claim, alleging she suffered unforeseeable substantial harm from Defendant when the undisclosed latent defect in the Braided Line caused the product to fail, resulting in flooding, property damage, and product replacement costs.  (*See* ECF No. 73 at 22–23 (citing ECF No. 24 at ¶¶ 46–47, 54, 80, 141).)  However, as here, "the failure to disclose a defect that might, or might not, shorten the effective life span of [a product] that functions precisely as warranted throughout the term of its express warranty cannot be characterized as causing a substantial injury to consumers, and accordingly does not constitute an unfair practice under the UCL."  *Daugherty*, 144 Cal. App. 4th at 839; *see also Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026–27 (9th Cir. 2008) (citing *Daugherty* with approval).  Thus, Plaintiff cannot state a UCL claim under the unfair prong.

For the foregoing reasons, Plaintiff fails to state a claim under the UCL, FAL, or CLRA.  Therefore, Defendant's motion to dismiss Claims Four, Eight, and Nine is GRANTED.  Plaintiff may amend these claims consistent with the findings discussed herein.

C.    Nationwide Class Claims (All Claims)

Finally, Defendant moves to dismiss Plaintiff's nationwide class claims pursuant to Rules

12(b)(2) and 12(b)(6) because non-residents may not invoke the protection of California statutes, Plaintiff does not specify which state's laws apply to her common law claims, and the Court does not have personal jurisdiction over Defendant with respect to the non-resident class members' claims. (ECF No. 69 at 11, 23–27.) The Court will address each argument in turn.

### i. Claims Asserted by Nationwide Class

Defendant argues non-residents of California cannot invoke the protections of California laws, and therefore these nationwide class claims must be dismissed. (*Id.* at 24); *see Wilson v. Frito-Lay N. Am. (Frito-Lay)*, 961 F. Supp. 2d 1134, 1147–48 (N.D. Cal. 2013) ("the Supreme Court of California has clarified that state statutes like the UCL, FAL, and CLRA presumptively do not apply to occurrences outside California") (citing *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011)). A review of the FAC reveals all claims are asserted on behalf of the nationwide class. (*See generally* ECF No. 24.) Claims One, Four, Eight and Nine (Song-Beverly Act, UCL, FAL, and CLRA) expressly arise from California law. Claims Two, Three, Five, Six, Seven, and Ten (implied warranty, express warranty, negligence, negligent failure to warn, strict liability, and unjust enrichment) are based on common law, but Plaintiff does not specify which states' laws are being invoked. While "[n]on-California citizens who made purchases in California could assert the same California causes of action that [p]laintiffs do," *Frito-Lay*, 961 F. Supp. 2d at 1148, Plaintiff concedes the non-residents in this case cannot assert California law-based claims. (ECF No. 73 at 23 n.1.)

Accordingly, Defendant's motion is GRANTED with respect to the nationwide class claims asserted under California law as follows: Claims One, Four, Eight and Nine are DISMISSED without leave to amend. To the extent Plaintiff's Claims Two, Three, Five, Six, Seven, and Ten are predicated on California common law, these claims are also DISMISSED without leave to amend.

### ii. Unspecified Common Law Claims

Defendant argues Plaintiff cannot maintain her common law claims (Claims Two, Three, Five, Six, Seven, and Ten) on behalf of the nationwide class because she does not specify which states' laws apply. (ECF No. 69 at 24–25.) Plaintiff does not address the failure to identify

which states' laws apply but instead argues it is premature at this juncture to dismiss class allegations prior to class certification.  (ECF No. 73 at 23.)

Courts have recognized class allegations may sometimes be stricken at the pleading stage. *See e.g.*, *Kamm v. California City Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim.").  However, "many courts have declined to so rule solely on the basis of the allegations in a complaint, preferring to address the propriety of the class action at a later stage in the litigation." *Khorrami v. Lexmark Int'l Inc.*, No. CV 07-01671 DDP (RCx), 2007 WL 8031909, at *2 (C.D. Cal. Sept. 13, 2007); *see also Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1221 (N.D. Cal. 2014) ("Courts that have stricken class allegations at the pleading stage have recognized that the 'granting of motions to strike class allegations before discovery and in advance of a motion for class certification is rare' and have only done so in rare occasions where the class definition is obviously defective in some way.") (citations omitted).  Indeed, Ninth Circuit precedent stands "for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

Here, it is undisputed that Plaintiff fails to identify which states' laws apply to her common law claims on behalf of the nationwide class.  As Defendant correctly notes, "failure to allege which state law governs a common law claim is grounds for dismissal." *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) (citing *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011)).  However, Defendant's argument that the claims must be dismissed with prejudice is unsupported in law. *See id.* (granting leave to amend to state which state law applies).

Accordingly, Defendant's motion is GRANTED as to Plaintiff's common law claims (Claims Two, Three, Five, Six, Seven, and Ten) as asserted by the nationwide class.  Plaintiff is granted leave to amend to state which state law applies.

In light of the Court's dismissal of all claims asserted by the nationwide class, the Court does not reach Defendant's remaining arguments.

**IV.    CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 69) is hereby GRANTED, as follows:

1. Plaintiff's claims for violations of the Song-Beverly Act, breach of implied warranty, and breach of express warranty (Claims One, Two, and Three) as asserted by Plaintiff are DISMISSED with leave to join another potential class representative who has a claim which is not time-barred;

2. Plaintiff's claims under California's Unfair Competition Law, False Advertising Act and Consumer Legal Remedies Act (Claims Four, Eight, and Nine) as asserted by Plaintiff are DISMISSED with leave to amend;

3. Plaintiff's claims under the Song-Beverly Act, Unfair Competition Law, False Advertising Act and Consumer Legal Remedies Act (Claims One, Four, Eight and Nine) as asserted by the nationwide class are DISMISSED without leave to amend; and

4. Plaintiff's common law claims for implied warranty, express warranty, negligence, negligent failure to warn, strict liability, and unjust enrichment (Claims Two, Three, Five, Six, Seven, and Ten) as asserted by the nationwide class are DISMISSED with leave to amend.

Plaintiff may file an amended complaint not later than 30 days after the date of electronic filing of this Order. Defendant shall file a response to the amended complaint pursuant to the Federal Rules of Civil Procedure and the Local Rules.

IT IS SO ORDERED.

DATED: June 29, 2021

Troy L. Nunley
United States District Judge